# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

JENNIFER S. COLCLASURE,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

1:17-cv-05560-NLH

**OPINION**

---

**APPEARANCES:**

RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
725 KENILWORTH AVE
CHERRY HILL, NJ 08002
    On behalf of Plaintiff

HEATHER ANNE BENDERSON
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET, 6TH FLOOR
PHILADELPHIA, PA 19123
    On behalf of Defendant

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[1] under Title II of the Social Security

---

[1] DIB is a program under the Social Security Act to provide
disability benefits when a claimant with a sufficient number of

Act.  42 U.S.C. § 423, et seq.  The issue before the Court is

whether the Administrative Law Judge ("ALJ") erred in finding

that there was "substantial evidence" that Plaintiff was not

disabled at any time since her alleged onset date of disability,

August 1, 2012.  For the reasons stated below, this Court will

affirm that decision.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On January 22, 2013, Plaintiff, Jennifer S. Colclasure,

protectively filed an application for DIB,[2] alleging that she

became disabled on August 1, 2012.[3]  Plaintiff claims that she

can no longer work as an interior designer, bartender, and

waitress because of the following impairments:  small facture or

contusion of the left lower extremity with resulting sympathetic

---

quarters of insured employment has suffered such a mental or
physical impairment that the claimant cannot perform substantial
gainful employment for at least twelve months.  42 U.S.C. § 423
et seq.

[2] A protective filing date marks the time when a disability
applicant made a written statement of his or her intent to file
for benefits.  That date may be earlier than the date of the
formal application and may provide additional benefits to the
claimant.  See SSA Handbook 1507; SSR 72-8.

[3] The claimant was 39 years old on the date of last insured,
which is defined as a younger individual (age 18-49). (20 C.F.R.
§ 404.1563.)

dystrophy, generalized anxiety disorder with panic attacks, dysthymia, and attention deficit hyperactivity disorder.

Plaintiff's initial claim was denied on May 22, 2013, and upon reconsideration on October 29, 2013.  Plaintiff requested a hearing before an ALJ, which was held on September 9, 2015.  On February 3, 2016, the ALJ issued an unfavorable decision. Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on May 26, 2017, making the ALJ's February 3, 2016 decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.


## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means

more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett

v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).

Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial

evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. <u>Sykes</u>, 228 F.3d at 262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. <u>See</u> 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B)

(emphasis added).

The Commissioner has promulgated regulations[4] for determining disability that require application of a five-step sequential analysis.  <u>See</u> 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

[4] The regulations were amended for various provisions effective March 27, 2017.  <u>See</u> 82 F.R. 5844.  Because the ALJ issued her decision prior to that effective date, the Court must employ the standards in effect at the time of her decision.

1.  If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2.  If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.  If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy.  If she is incapable, she will be found "disabled."  If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence.  <u>See</u> <u>id.</u>  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden

shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

## C. Analysis

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At step two, the ALJ found that Plaintiff's impairments of small facture or contusion of the left lower extremity with resulting sympathetic dystrophy, generalized anxiety disorder with panic attacks, dysthymia, and attention deficit hyperactivity disorder were severe.[5] At step three, the

---

[5] According to the ALJ's decision, Plaintiff's physical injury occurred when she tripped over her dog in November 2011:

> Initially, she was treated for a small fracture (Exhibit 8F, page 10). Due to increasing pain, she was placed in a boot (Id.). Then, in December, an MRI revealed a small developing ganglion cyst superficial to the flexor halluces longus tendon and a contusion along the dorsal aspect of the base of the distal phalanx of the great toe with a small amount of fluid within the interphalangeal joint of the great toe and between the distal first and second metatarsal heads (Exhibit 1F). Thereafter, she was started on narcotic pain medications, which helped temporarily (Exhibit 8F, page 10). In April 2012, the claimant underwent a neurological evaluation (Id. at 10-11). At that time, she reported burning pain in the first and second toe of the left foot with some extension into the arch (Id. at 10). As diagnostic testing was relatively unremarkable, this was attributed to reflex sympathetic dystrophy and she was started on gabapetin (Id. at 11).

(R. at 21.)

ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments. The ALJ then determined that Plaintiff's residual functional capacity ("RFC") precluded her from performing her past work as an interior designer, bartender or waitress, but her RFC rendered her capable of performing unskilled work at the light exertional level,[6] including jobs such as an assembler-bench work, travel clerk-motor vehicle transportation, and assembler-small products (steps four and five).

Plaintiff argues that the ALJ erred in considering the opinions of two of her treating physicians, as well as a state consultant examiner. Plaintiff argues that the ALJ also erred in the evaluation of her credibility, by rejecting her husband's third-party function report, and by failing to consider her need to sit cross-legged in determining that jobs exist in the national economy she is capable of performing.

All of Plaintiff's arguments ultimately culminate into a challenge to the ALJ's determination that Plaintiff retained the

---

[6] See 20 C.F.R. § 404.1568 ("[O]ccupations are classified as unskilled, semi-skilled, and skilled."); 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

RFC to perform unskilled work[7] at the light work exertional

level.[8]  In making the RFC determination, the ALJ is required to

do the following:

> In determining whether you are disabled, we consider all
> your symptoms, including pain, and the extent to which your
> symptoms can reasonably be accepted as consistent with the
> objective medical evidence and other evidence.  By
> objective medical evidence, we mean medical signs and
> laboratory findings . . . .  By other evidence, we mean . .
> . statements or reports from you, your treating or
> nontreating source, and others about your medical history,
> diagnosis, prescribed treatment, daily activities, efforts
> to work, and any other evidence showing how your
> impairment(s) and any related symptoms affect your ability
> to work. . . .

20 C.F.R. § 404.1529.  The RFC reflects "what [the claimant] can

still do despite [his or her] limitations," 20 C.F.R. §

416.945(a), and the controlling regulations are clear that the

RFC finding is a determination expressly reserved to the

Commissioner, not medical providers.  20 C.F.R. §§

---

[7] Unskilled work "is work which needs little or no judgment to do
simple duties that can be learned on the job in a short period
of time."  20 C.F.R. § 404.1568.

[8] See 20 C.F.R. § 404.1567 ("Light work. Light work involves
lifting no more than 20 pounds at a time with frequent lifting
or carrying of objects weighing up to 10 pounds. Even though the
weight lifted may be very little, a job is in this category when
it requires a good deal of walking or standing, or when it
involves sitting most of the time with some pushing and pulling
of arm or leg controls. To be considered capable of performing a
full or wide range of light work, you must have the ability to
do substantially all of these activities. If someone can do
light work, we determine that he or she can also do sedentary
work, unless there are additional limiting factors such as loss
of fine dexterity or inability to sit for long periods of time.
. . .").

404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c).

In this case, the ALJ determined:

[T]he claimant had the residual functional capacity to lift
and carry 20 pounds occasionally and 10 pounds frequently,
she could only stand/walk for 2 of 6 hours, but not
consistently because she must be able to sit for 5 minutes
after 30 minutes of standing/walking and sit for 6 to 8
hours, but must be able to stand/walk for 5 minutes after
30 minutes of sitting; occasionally climb ramps or
scaffolds. Additionally, she was limited to simple
instructions and simple work-related decisions in a routine
environment with infrequent changes.

(R. at 20.)

### 1. Whether ALJ did not properly consider three medical source opinions

Turning first to Plaintiff's argument that in forming
Plaintiff's RFC the ALJ did not properly consider three medical
source opinions, Plaintiff argues that the ALJ rejected without
basis the opinions of Plaintiff's primary care physician, Dr.
Bruce Lipsius, and a consultative examiner, Dr. P. Lawrence
Seifer. Plaintiff further argues that the ALJ properly afforded
"great weight" to her treating pain management physician, Dr.
Stephen S. Boyajian, but then ignored his opinions that support
Plaintiff's disability.

The Court does not agree that the ALJ erred in her
consideration of those medical sources. An ALJ may rely upon
treating and consultative medical source opinions in varying
degrees. The role of this Court under the substantial evidence
standard of review is to determine whether the ALJ sufficiently

12

explained why she rejected or accepted some or all of those sources' opinions. See Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted to accept or reject all or part of any medical source's opinion, as long as the ALJ supports his assessment with substantial evidence."); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them. . . . [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."); Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (holding that an ALJ "may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects"). The ALJ properly did so here.

Dr. Lipsius opined that Plaintiff's medication would severely limit her ability to work due to difficulty concentrating and an impaired memory. He also stated that Plaintiff was only capable of sedentary work in which she sat for no more than two hours and stood/walked for up to one hour, in addition to a requirement for breaks to elevate her leg. Plaintiff takes issue with the ALJ affording "little weight" to Dr. Lipsius's opinion because it was rendered after only seeing

13

Plaintiff one time.  Plaintiff argues that Dr. Lipsius is a member of the same practice as another treating physician, Dr. Hillard Sharf, whom Plaintiff visited several times, and he relied upon Dr. Sharf's notes to issue his opinion.  Plaintiff also points out that Dr. Lipsius previously ordered radiological testing for Plaintiff, and he should not therefore be equated with a one-time consultative examiner whose opinion has less reliability.

We find no error in the decision to afford Dr. Lipsius's opinion little weight.  Plaintiff's main pain management physician, Dr. Sharf, noted in August 2013, "Overall, I think she has a stable complex regional pain syndrome."  (R. at 386.)  That appears to be Plaintiff's last visit with Dr. Sharf.  Dr. Lipsius completed his check-the-box Medical Source Statement in 2014, in which he notes, in response to a question about the probability that physical activity will increase Plaintiff's pain, that the question "is difficult to answer, as I have only seen Plaintiff once."  (R. at 417.)  Thus, it is not clear that Plaintiff was actually examined by Dr. Lipsius on the date he completed the questionnaire, and that note appears to explain the ALJ's reference to Dr. Lipsius only seeing Plaintiff one time.

Moreover, to the extent that the ALJ did not afford Dr. Lipsius's answers on the Medical Source Statement greater

weight, the Court does not find it to be in error, as "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). Most importantly, contrary to Plaintiff's argument, the ALJ did not discount Dr. Lipsius's opinion solely because it was provided after a single visit. While the ALJ noted that fact, she further explained that Dr. Lipsius's opinion was inconsistent with Plaintiff's neurology records, which indicated that Plaintiff's complex regional pain syndrome was stable.

To that point, Plaintiff argues that the stability of her pain syndrome does not automatically correlate to non-disability – for example Plaintiff's pain could be "stable" at a level that was totally disabling. Granting that general observation as true, the Court, however, does not view the ALJ's reference to Plaintiff's pain syndrome being "stable" in the way Plaintiff interprets it. To the contrary, the ALJ adequately explains in other parts of the decision how Dr. Sharf's opinion as to Plaintiff's stability, and other medical references to her level of pain, are consistent with, and do not preclude, Plaintiff's ability to perform light, unskilled work, and are not consistent, as Plaintiff contends, with a fixed state of disabling pain.

With regard to Dr. Seifer, who examined Plaintiff one time

as a state consultant examiner for her mental impairments, the ALJ related, "Given her complaints, Dr. Seifer opined that the claimant has moderate to severe limitations due to a combination of physical and mental impairments.  He also diagnosed the claimant with panic disorder without agoraphobia, dysthymic disorder, attention deficit/hyperactivity disorder and pain disorder with a GAF of 50."  (R. at 23.)  The ALJ accorded "little weight" to Dr. Seifer's opinion because it failed to provide specific limitations, and provided an opinion regarding both Plaintiff's mental and physical impairments even though he did not physically examine her.  (Id.)

Plaintiff argues that the ALJ should not have discounted Dr. Seifer's assessment of her Global Assessment of Functioning ("GAF")[9] score of 50, and contends that a psychological evaluator

---

[9] The GAF Scale ranges from zero to one-hundred.  An individual's "GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range." For example,

A GAF of 71-80 is "If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational or school functioning (e.g., temporarily failing behind in schoolwork)."

A GAF of 61-70 is "Some mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."

is capable of opining on the physical aspects of a patient's condition and noting non-psychological problems.

With regard to Plaintiff's GAF, the ALJ noted that GAF scores are "not dispositive of impairment severity or the ability to meet the mental demands of work; rather, they represent medical opinions that require supporting evidence to be accorded significant weight." (R. at 23.) A GAF of 50 constitutes serious symptoms, such as suicidal ideation, or any serious impairment in social or occupational functioning, such as having no friends, or being unable to keep a job. The ALJ did not wholesale discount Dr. Seifer's assigned GAF, but found that the other evidence did not support such a score, including the opinion of Dr. Thomas Yared, who found that Plaintiff's mental impairments imposed only mild limitations in Plaintiff's daily living activities, and no limitations in social functioning. Additionally, Plaintiff's own testimony about her daily activities and social functioning, including her ability to date and socialize with friends and family, as detailed in

--------

A GAF of 41-50 is "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) ("DSM-IV-TR") p. 34.

the ALJ's decision, undermines the GAF of 50.

As for the ALJ's comment about Dr. Seifer's opinions on Plaintiff's physical impairments, the ALJ did not suggest that a mental health treatment provider could not opine on the correlation between a patient's mental and physical impairments and the effect physical impairments may have on a patient's mental health. Rather, for the purposes of determining Plaintiff's RFC, the ALJ noted that Dr. Seifer did not physically examine Plaintiff's foot and legs to render a credible opinion on those impairments.

The third medical provider Plaintiff contends the ALJ erred in considering is Plaintiff's treating pain management physician, Dr. Stephen S. Boyajian. Plaintiff argues that the ALJ properly afforded "great weight" to his opinions, but then ignored his finding that Plaintiff was limited to sedentary work, with standing and walking less than 2 hours per day, and occasionally lifting 10 pounds, which findings undermine the ALJ's RFC assessment.

The ALJ did not err in her assessment of Dr. Boyajian's opinion. First, providing "great weight" to a treating physician is a textbook application of the SSA regulations. Second, the opinion of Dr. Boyajian that Plaintiff argues the ALJ improperly ignored was provided on a check-the-box form, which as the Court noted above, is "weak evidence." Mason, 994

F.2d at 1065; Zonak v. Commissioner of Social Sec., 290 F.
App'x 493, 497 (3d Cir. 2008) (affirming the ALJ's rejection of
the plaintiff's treating physician's opinion because it was
provided on a check-box form and no reasons were given in
support of the doctor's conclusion on that form).

Additionally, the ultimate conclusion of the exertional and
skill levels of work Plaintiff is capable of performing is the
province of the ALJ, and not a medical provider. See Wilkinson
v. Commissioner Social Sec., 558 F. App'x 254, 256 (3d Cir.
2014) (citations omitted) (explaining that "no rule or
regulation compels an ALJ to incorporate into an RFC every
finding made by a medical source simply because the ALJ gives
the source's opinion as a whole 'significant' weight," and that
the ALJ was not required to adopt all of a treating source's
opinion solely because she found the opinion as a whole
persuasive, as it is not a court's role to "re-weigh the
evidence of record and substitute [our] judgment as to whether
[the claimant] is disabled under the Act for that of the ALJ").
Plaintiff does not point to any other opinions provided by Dr.
Boyajian that the ALJ failed to consider, and indeed, Dr.
Boyajian provided for no limitations in sitting, which is less
restrictive than the ALJ's RFC assessment.

In sum, the ALJ thoroughly and properly articulated why she
credited certain medical source opinions and why she did not

credit other opinions.  The ALJ therefore did not err in her

consideration of the opinions of Dr. Lipsius, Dr. Seifer, or Dr.

Boyajian.  This Court may not substitute its own judgment for

the reasoned assessments of the medical evidence made by the

ALJ.

### 2. Whether the ALJ erred in assessing Plaintiff's credibility

Plaintiff argues that the ALJ did not take into account

Plaintiff's statements and testimony about her limitations.  The

Court does not agree.

When an ALJ specifically identifies and explains what

evidence she has found not credible and why she has found it not

credible, a court must defer to the ALJ's assessment of

credibility.  Zirnsak v. Colvin, 777 F.3d 607, 612 (3d Cir.

2014) (citations omitted); see also SSR 96-7p ("No symptom or

combination of symptoms can be the basis for a finding of

disability, no matter how genuine the individual's complaints

may appear to be, unless there are medical signs and laboratory

findings demonstrating the existence of a medically determinable

physical or mental impairment(s) that could reasonably be

expected to produce the symptoms.").  Ultimately, "[t]he

credibility determinations of an administrative judge are

virtually unreviewable on appeal." Richardson v. Commissioner

of Social Security, 2017 WL 6550482, at *8 (D.N.J. 2017) (citing

Hoyman v. Colvin, 606 F. App'x 678, 681 (3d Cir. 2015) (citing
Bieber v. Dep't of the Army, 287 F.3d 1358, 1364 (Fed. Cir.
2002)).

A long line of cases supports that proposition. See, e.g.,
Wanko v. Barnhart, 91 F. App'x 771, 774 (3d Cir. 2004) (noting
that "[w]e afford the credibility determinations of the ALJ
great weight because he had the opportunity to observe the
demeanor and hear the testimony given by [the claimant]," and
finding that because the ALJ gave legally sufficient reasons in
support of his finding that the plaintiff's testimony was not
entirely credible, the ALJ's decision to discount the
plaintiff's testimony was supported by substantial evidence);
Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014) ("[T]he
ALJ must necessarily make certain credibility determinations,
and this Court defers to the ALJ's assessment of credibility";
"[h]owever, the ALJ must specifically identify and explain what
evidence he found not credible and why he found it not
credible."); Marquez v. Astrue, 2011 WL 835604, at *9 (D.N.J.
2011) (citing Wier v. Heckler, 734 F.2d 955, 962 (3d Cir. 1984))
(declining to substitute its own determination of credibility
for that of the ALJ, given that the ALJ had the opportunity to
observe the plaintiff first-hand).

In this case, the ALJ detailed Plaintiff's subjective
complaints and contrasted them to her daily activities and the

medical evidence.  (R. at 18-19, 20, 22, 23.)  The ALJ

concluded:

> Upon consideration of the evidence of record, I find that
> the claimant's medically determinable impairments could
> reasonably be expected to produce some symptoms. However,
> having considered the entire evidence of record and the
> criteria of SSR 96-7p and 20 CFR 416.929, I find the
> claimant's statements that she was unable to work are not
> supported and are not credible in light of the
> discrepancies between the claimant's assertions, testimony,
> and medical record.  The record shows that the treatment
> the claimant has received has been routine and
> conservative, consisting of a couple of blocks, therapy and
> medication management.  In fact, her treating neurologist
> indicated that her complex regional pain syndrome was
> stable and she was doing reasonably well (Exhibit 8F, pages
> 2 & 4).  In terms of her mental health, she testified that
> it was not disabling.  Moreover, the record indicates that
> the claimant's symptoms improve with the use of
> medications, though they are exacerbated by life stressors.
> Therefore, the evidence fails to substantiate the
> claimant's allegations of debilitating limitations.
> Accordingly, I find the claimant's testimony and
> allegations are not fully credible.

(R. at 23.)

Plaintiff seems to argue the ALJ erred because she did not

fully credit her statements about her condition and limitations,

but the ALJ was not obligated to do so.  The Court is satisfied

that the ALJ properly considered Plaintiff's subjective

complaints in line with the medical evidence, and properly

explained why she did not fully credit Plaintiff's statements.

Thus, the ALJ's credibility determination cannot be found to be

improper.

**3. Whether the ALJ erred in considering Plaintiff's husband's third-party function report**

Plaintiff next argues that the ALJ erred by affording "little weight" to the third-party function report completed by her then-husband in March 2013. As to this report, the ALJ found:

> A statement was also provided by the claimant's (ex)-husband in a third-party function report (Exhibit 4E). This statement has been given little weight, as it is a lay opinion based upon casual observation, rather than objective medical examination and testing. Further, it was potentially influenced by loyalties of family. It certainly does not outweigh the accumulated medical evidence regarding the extent to which the claimant's impairments limit her functional abilities. Ultimately, this statement is not persuasive for the same reasons set forth above in finding the claimant's allegations to be less than wholly credible.

(R. at 20-21.)

Plaintiff contends that under the regulations the ALJ cannot simply discount a spouse's statement because of the familial relationship. Plaintiff also argues that the statement is consistent with Plaintiff's testimony and the medical evidence.

The standard for assessing a family member's statements or testimony is similar to the one for assessing a claimant's statements. When evaluating evidence from non-medical sources such as family or friends, an ALJ should consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other

factors that tend to support or refute the evidence.  <u>Zirnsak v.</u>

<u>Colvin</u>, 777 F.3d 607, 612 (3d Cir. 2014) (citing SSR 06–03p).

In doing so, the ALJ must make certain credibility

determinations, and a reviewing court defers to the ALJ's

assessment of credibility.  <u>Id.</u>

The ALJ followed these guidelines in considering

Plaintiff's spouse's function report.  Plaintiff simply

disagrees with that assessment.  The Court does not find any

error by the ALJ in this regard.

**4.   Whether the ALJ erred by failing to address**
**Plaintiff's need to sit cross-legged**

Plaintiff testified that she needs to sit cross-legged in a

chair in order to sit without pain.  During the hearing, the VE

was questioned about whether this requirement would preclude

some jobs, and the VE stated that he could not opine as to a

reduction in the job numbers without observing the work

environment at each employer.  Plaintiff argues that when the

ALJ failed to consider Plaintiff's need to sit cross-legged in

her RFC assessment, or at step five when determining whether

jobs existed in the national economy that Plaintiff could

perform, the ALJ committed reversible error.

This argument is unpersuasive for two reasons.  First, the

cross-legged sitting position requirement was solely Plaintiff's

own.  No medical source noted that particular requirement.

Thus, Plaintiff's special sitting position is a matter of assessing Plaintiff's credibility, which the Court already concluded was properly done in this case.

Second, an ALJ is not required "to submit to the vocational expert every impairment alleged by a claimant." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (citations omitted). Instead, "hypotheticals posed must accurately portray the claimant's impairments and [] the expert must be given an opportunity to evaluate those impairments as contained in the record." Id. (internal quotations and citations omitted). Here, the ALJ's hypothetical to the VE accurately portrayed Plaintiff's impairments as she found them to be based on the medical evidence, Plaintiff's daily living activities, and Plaintiff's testimony that she found credible.

Moreover, the ALJ cannot be faulted for the VE's inability to determine how sitting cross-legged in a certain job would affect that job. The Court's independent research found only one case in the entire nation that addressed a similar argument: "Plaintiff [] argues the ALJ should have included a cross-leg requirement for all sitting, however the ALJ appropriately found the restriction unfounded because of his evaluation regarding Plaintiff's credibility and the lack of support for such restriction in the medical record. Thus, the hypothetical adequately represented Plaintiff's physical abilities, was based

on substantial evidence, and therefore, was an appropriate basis on which the ALJ could rely." Rohrs v. Commissioner of Social Sec., 2015 WL 4644900, at *15 (N.D. Ohio 2015).

This Court comes to the same conclusion, and therefore finds that the ALJ's decision should not be reversed because of Plaintiff's subjective need to sit cross-legged.


## III. Conclusion

This Court may not second guess the ALJ's conclusions, but may only determine whether substantial evidence supports the ALJ's determinations. Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal principal that applies to the assessment of all of the other standards: A district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ). The Court finds in this case the ALJ's determination that Plaintiff was not totally disabled as of August 1, 2012 is supported by substantial evidence. The decision of the ALJ is therefore affirmed.

An accompanying Order will be issued.


Date: November 29, 2018           s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.